UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
THE NEW YORK TIMES COMPANY AND
CHARLIE SAVAGE,

    Plaintiffs,

   - against –

FEDERAL BUREAU OF
INVESTIGATION,

    Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 10888 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

   In April 2021, the New York Times and reporter Charlie Savage (the "plaintiffs") filed a Freedom of Information Act ("FOIA") request with the Federal Bureau of Investigation ("FBI" or "the Government") seeking documents related to shootings involving FBI officers.  After over a year spent negotiating the release of documents and six rounds of productions encompassing hundreds of pages of responsive documents, the Court now has before it cross-motions for summary judgment regarding redactions on two pages.  The dispute concerns the FBI's invocation of Exemptions 6 and 7(C) to FOIA, which both relate to privacy concerns.

   For the reasons articulated below, the Court believes the redactions are appropriate and grants summary judgment in favor of the Government.

**BACKGROUND**

### I.   The Freedom of Information Act

The FOIA requires that federal agencies make their records "promptly available to any person" upon request. 5 U.S.C. § 552(a)(3)(A).  This mandatory disclosure regime is limited by nine statutory exemptions. Id. § 552(b).  Moreover, even when information falls under one or more of those exemptions, agencies may withhold that information only if "the agency reasonably foresees that disclosure would harm an interest protected by [the] exemption" or if "disclosure is prohibited by law."  Id. § 552(a)(8)(A).

Upon receiving a request for information, agencies have 20 business days to determine whether to comply with such requests and to notify the requester of its determination.  Id. § 552(a)(6)(A)(i).

Finally, the FOIA provides a private right of action that permits requesters to challenge whether an agency has improperly withheld information that must be disclosed.  Id. § 552(a)(4)(B).

## II.  Factual Background[1]

### a. Background of Request

The New York Times and reporter Charlie Savage have submitted a series of FOIA requests related to shooting incidents involving FBI agents, since reporting their first story on the topic in 2013. Sumar Decl. ¶ 2; Seidel Decl. ¶ 11.  According to plaintiffs, when an FBI officer discharges a firearm, there is an administrative review, in which a "shooting incident review team" ("SIRT") investigates and compiles a report.  Sumar Decl. Ex. 1.  That report is then given to a group of officials, known as the "Shooting Incident Review Group" ("SIRG") who determine whether the shooting complied with the Department of Justice ("DOJ") policy.  Id.  The SIRG can also recommend discipline or refer the incident to the FBI's Internal Investigations Section or the Office of Professional Responsibility ("OPR").  Id.

---

[1] The facts described above are taken from the affidavits filed by the FBI in support of their motion.  See Declaration of Michael Seidel ("Seidel Decl."), ECF No. 24; Second Declaration of Michael Seidel ("Second Seidel Decl."), ECF No. 42. While typically this district requires parties to submit Local Rule 56.1 statements in support of motions for summary judgment, "'[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Rule 56.1 statements are not required."  New York Times Co. v. U.S. Dep't of Justice, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (quoting Ferguson v. F.B.I., No. 89-cv-5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd 83 F.3d 41 (2d Cir. 1996); see also Doyle v. U.S. Dep't of Homeland Security, 331 F. Supp. 3d 27, 44 n.11 (S.D.N.Y. 2018) (rejecting plaintiff's argument that the government's motion for summary judgment should be denied for failure to submit a Local Rule 56.1 Statement). For background on plaintiffs' FOIA request, the Court relies on the declaration of Al-Amyn Sumar ("Sumar Decl.").  See ECF No. 28.

Plaintiffs have requested records from the SIRT, SIRG, and OPR, and from these records, have been reporting on incidents involving FBI shootings and the disciplinary actions, or lack thereof, which resulted.  As plaintiffs continued reporting on this topic, they have filed new requests, seeking more up-to-date records.  Seidel Decl. ¶ 11.

Prior to the present request, plaintiffs made a request on February 20, 2019 (the "2019 Request") seeking documents related to internal FBI reviews of shooting incidents.  Id. ¶ 7.  On May 11, 2021, the FBI responded to this request, informing plaintiffs that it had reviewed 190 pages of documents and would be releasing 167 pages.  Id. ¶ 9.  This request did not result in litigation.  Id. ¶ 10.

### b. 2021 FOIA Request

However, while the FBI was evaluating the 2019 Request and prior to their response, plaintiffs submitted a new and separate request on April 5, 2021 (the "2021 Request").  Id. ¶ 11.  Once again, this request sought documents related to the agency's review of shooting incidents involving FBI agents.  Id.

The request noted "I have periodically submitted a series of FOIA requests for documents related to internal bureau reviews of shooting incidents" and "[t]his has occasionally resulted in

litigation, but also on occasion the FBI has processed cycles of documents without litigation." <u>Id.</u>

Specifically, the 2021 Request asked for: (1) "the narrative summary and any findings or recommendations attached to each shooting incident review team (SIRT) report"; (2) "the narrative summary, discussion, and decisions report for each shooting incident review group (SIRG) report"; and (3) for incidents in which a person was struck or the SIRG found the shooting did not comply with the use of force policy, the state and local law enforcement investigative reports, the "Civil Rights Division report[s]," and, as relevant here, "cop[ies] of any Office of Professional Review determinations and findings for any agent referred for discipline due to a shooting incident, and any appeals thereof." <u>Id.</u>

### c. Initiation of Litigation and Production of Documents

Without a response from the Government regarding the 2021 Request, plaintiffs filed the present action on December 20, 2021, demanding that the FBI search for and produce documents responsive to their FOIA request.[2]   <u>See</u> ECF No. 1.   The Government answered

---

[2] The FBI asserts that because of the similarities between this request and the 2019 one that was still being processed at the time, they did not fully appreciate that the 2021 Request was separate and had initially logged it as part of the 2019 Request.   <u>Id.</u> ¶¶ 12, 13.

on February 18, 2022, see ECF No. 10, and six weeks later informed the Court that the parties had reached an agreement on a schedule to produce certain relevant documents, see ECF No. 12.

To do so, the FBI searched the Central Records System and "conducted targeted searches of the two FBI offices likely to possess responsive records, specifically the FBI's Inspection Division (INSD) and the FBI's Office of Professional Responsibility (OPR)." Id. ¶ 23. As a result, between May 23, 2022 and September 21, 2022, the FBI made five productions of records to plaintiffs.[3] Id. ¶¶ 16-21. In total, the FBI reviewed 703 pages and ultimately produced six pages in full and 667 in part. Id. ¶ 15.

Despite this, the parties reached an impasse and, on October 5, 2022, requested leave to make cross-motions for summary judgment. See ECF No. 20. The Court granted leave and on November 9, 2021, the Government filed their motion for summary judgment along with the declaration of Michael Seidel. See ECF

---

[3] First, in a May 23, 2022 letter, the FBI released the first set of records totaling 17 pages. Id. ¶ 16. A second production of 468 pages based on a review of 498 pages was then made on June 24, 2022, id. ¶ 18, followed by a third production of 164 pages based on a review of 184 pages on July 25, 2022, id. ¶ 19, and a fourth production on August 12, 2022, which included all 19 pages it reviewed, id. ¶ 20. Finally, on September 21, 2022, the FBI released a fifth production including all 7 pages it reviewed, id. ¶ 21. This fifth production included the first reprocessing of the documents at issue in this motion. Id. ¶ 21.

Nos. 22-24.  A month later, plaintiffs filed their cross-motion
and opposition, which similarly included a declaration.  See ECF
Nos. 26-28.  Initially, plaintiffs challenged the adequacy of the
search pertaining to two specific shooting incidents, the
withholding of two documents (a total of five pages) under
Exemptions 7(A) and 7(E), and the redactions to two OPR precedent
reports under Exemptions 6 and 7(c).  Pls. Mem. of Law in Support
of Cross-Motion and in Opp. to FBI's Motion ("Pls. Br.") at 6, ECF
No. 27; Mem. of Law in Support of FBI's Motion for Summary Judgment
("Gov't Br.") at 5, ECF No. 23.

However, even after the initial motion, the parties continued
to negotiate a solution.  As a result, on December 14, 2022, the
FBI wrote to the Court that "[i]n response to Plaintiff's cross-
motion, FBI intends to reprocess certain records at issue, and
also intends to search for records, which may narrow the issues in
dispute." ECF No. 31.  To do so, the FBI requested a 30-day
extension of the briefing schedule.  Id.  At the end of that 30-
day period, the FBI again wrote, informing us that it had "re-
conducted certain aspects of its search for records responsive to
Plaintiffs' request" and "[b]ased on these results to date, FBI
now anticipates that it is likely to have additional responsive
records to review and process for productions to Plaintiffs." ECF

No. 33.  Because the FBI represented that it would be producing
more documents in an effort to narrow the dispute, the Court
granted the FBI's request to hold the briefing schedule in
abeyance.  See ECF No. 34.

During this period, an additional production was made.  On
April 24, 2023, the FBI informed plaintiffs that it had reviewed
147 pages and released 146 in full or in part.  Second Seidel Decl.
¶ 5 n.2.

### d. Remaining Dispute

Despite these discussions and the latest production, the
parties informed the Court on May 24, 2023 that they needed to
resume briefing on a narrowed set of issues.  See ECF No. 39.  The
Court entered a briefing schedule, see ECF No. 40, and on June 30,
2023, the FBI submitted its reply brief ("Gov't Reply Br.") on the
sole remaining issue, see ECF No. 41, along with a second
declaration of Michael Seidel, see ECF No. 42.  On August 11, 2023,
plaintiffs submitted their reply ("Pls. Reply Br.").  See ECF No.
43.

The remaining dispute concerns the redactions to the two OPR
reports identified in plaintiffs' initial motion (Bates-numbered
21-cv-10888-676 and 683-684) (the "Documents").  Previously, the
FBI had redacted essentially all of the information in these

records, and plaintiff challenged the redactions.  <u>See</u> ECF No. 27. However, in reprocessing the documents after briefing began, the FBI unredacted most of the information, leaving a small set of limited redactions, which are the subject of this motion.

The Documents are Office of Professional Responsibility Precedent Reports, which "are summaries of previous reviews of possible misconduct by FBI personal, conducted by OPR, and resulting in disciplinary actions decided upon by OPR as a result of its reviews."  Second Seidel Decl. ¶ 9.  Specifically, they involve Offense Code 5.15, which refers to the intentional discharge of a weapon.  Seidel Decl. ¶ 40 n. 9.  The purpose of the precedent reports is to provide summaries that can be "used as precedent for determining what disciplinary actions should be used in similar situations."  Second Seidel Decl. ¶ 9.

The Documents were initially withheld, then reprocessed and released with redactions in September 2022, and finally reprocessed again with even narrower redactions during the negotiations after the motion and cross-motion were filed.  ECF No. 39; Second Seidel Decl. ¶ 14.  The documents now at issue contain redactions to summaries of incidents that occurred on March 22, 2019 and February 11, 2019.[4]

---

[4] Document '676 and '683-684 are practically identical.  They contain the same incident reports for the March 22, 2019 and February 11, 2019 incidents and the

The FBI states they redacted "1) OPR numbers, which are unique numbers specific to particular FBI OPR disciplinary actions; and 2) descriptions of the alleged misconduct at issue in these reports, as well as mitigating and aggravating factors." Second Seidel Decl. ¶ 10.   The FBI further explained:

> FBI determined that the details in the withheld descriptions relate to a small number of FBI agent-involved shooting incidents.   Details about these incidents may be available, whether to the public or to other employees within the FBI, through other sources. Accordingly, revealing these descriptions risks disclosing the identities of individuals who were the subjects of these OPR disciplinary actions, as well as third parties involved in the incidents, who would likely be identifiable from the content of the withheld descriptions.

Id. ¶ 12.

Looking at the documents and reviewing the redactions in context, these redactions include, for example, the number of years an officer was at the FBI, prior injuries the officer suffered, and potential references to third parties (i.e., "employee improperly stored his weapon upon arriving [REDACTED] and fired his weapon at [REDACTED] while [REDACTED] extremely close by"). See Second Seidel Decl. Ex. A.   The FBI also redacted two lines of

---

same redactions.   The only difference between the two documents is that the '683-684 document includes a third incident, dated December 15, 2015, which does not include any redactions.   See Second Seidel Decl. Ex. A.

the narrative of the February 11, 2019 incident.  However, the FBI did not redact the OPR proposed or final decision, included only minimal redactions to the "Mitigation" and "Aggravation" factors, and on the second document, included no redactions at all to the description of an incident that occurred on December 15, 2015. Second Seidel Decl. Ex. A.  In reprocessing the records, the redactions were significantly reduced from the prior production in September 2022, in which the FBI had redacted everything except the date of the incident and the OPR Final Decision.  See Seidel Decl. Ex L.

### STANDARD OF REVIEW

Presently before the Court are cross-motions for summary judgment regarding these redactions.  Summary judgment is the preferred vehicle for resolving disputes over an agency's application of a FOIA exemption.  See Seife v. U.S. Dep't of State, 298 F. Supp. 3d 592, 604 (S.D.N.Y. 2018) (citation omitted).  As with all motions for summary judgment, courts will not grant the requested relief unless the parties' submissions, viewed together, establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Courts review <u>de novo</u> whether a FOIA exemption applies, 5 U.S.C. § 552(a)(4)(B), and resolve "all doubts as to the applicability of the exemption . . . in favor of disclosure." <u>N.Y. Times Co. v. U.S. Dep't of Justice</u>, 756 F.3d 100, 112 (2d Cir. 2014) (citation omitted). This means that "the agency's decision that the information is exempt from disclosure receives no deference." <u>Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.</u>, 601 F.3d 143, 147 (2d Cir. 2010) (citations omitted). Instead, the FOIA places the burden on the defending agency to justify its decision to withhold information under a FOIA exemption. 5 U.S.C. § 552(a)(4)(B).

For an agency to carry this burden, it must demonstrate "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." <u>Ruotolo v. Dep't of Justice, Tax Div.</u>, 53 F.3d 4, 9 (2d Cir. 1995) (citation omitted). An agency may fulfill this requirement by submitting declarations that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." <u>Wilner v. Nat'l Sec. Agency</u>, 592

-12-

F.3d 60, 73 (2d Cir. 2009) (citation omitted).  These agency submissions are "accorded a presumption of good faith," and thus "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Id. at 69, 73 (citations omitted).

On the other hand, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Def., 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

## DISCUSSION

The Court now evaluates the cross-motions for summary judgment.  The FBI argues that Exemptions 6 and 7(C), which weigh individual privacy interests against the public's interest in disclosure, were properly applied.[5]  Gov't Reply Br. at 1. Plaintiffs challenge the application of these privacy-related FOIA exemptions in their cross-motion, instead arguing that Exemption 7(C) does not apply because the OPR reports were not compiled for

---

[5] Within the briefings there were some references to Exemption 5.  However, in a letter on August 23, 2023, the FBI wrote the Court informing us that they are no longer pursuing Exemption 5 and that we need not consider the invocation of Exemption 5.  See ECF No. 44.

law enforcement, that the FBI has failed to articulate a privacy interest, and that the public has a much greater interest in the disclosure. See Pls. Reply Br.  The Court finds there is a strong privacy interest and minimal public interest, and accordingly grants the FBI's motion for summary judgment.

## I.    FOIA Exemptions 6 and 7(C)

Because both exemptions balance individual privacy interests against the public interest in disclosure, we, like other courts, analyze the exemptions together.  See Conti v. U.S. Dep't of Homeland Sec., No. 12-cv-5827 (AT), 2014 WL 1274517, at *17 (S.D.N.Y. Mar. 24, 2014).

Under Exemption 6, the government need not disclose "personnel and medical and similar files" if it "would constitute a clearly unwanted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of "Exemption 6 [is] to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 599 (1982).

Similarly, Exemption 7(C) also permits redactions to or withholding of documents due to privacy interests for documents compiled for law enforcement.  Specifically, it exempts from disclosure "records or information compiled for law enforcement

-14-

purposes [that] . . . could reasonably be expected to constitute an unwanted invasion of personal privacy." Id. § 552(b)(7)(C). The exemption under 7(C) is "more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." Am. Civil Liberties Union v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal citation and quotation marks omitted); see 5 U.S.C. § 552(7)(C) (disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy"); cf. id. § 552(b)(6) (disclosure "would constitute a clearly unwarranted invasion of privacy"). Therefore, if a document passes the more stringent balancing test under Exemption 6, it will necessarily survive the balancing test under Exemption 7.

Under both exemptions, "[t]he privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person." Wood v. F.B.I., 432 F.3d 78, 88 (2d Cir. 2005) (internal quotation marks omitted). In particular, government employees and officials "have privacy interests to the extent that revelation of their identities 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'"

Halpern v. F.B.I., 181 F.3d 279, 297 (2d Cir. 1999) (quoting Massey v. F.B.I., 3. F.3d 620, 624 (2d Cir. 1993)).

On the other hand, the Court must weigh the public's interest in disclosure.  This involves the "extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Wood, 432 F.3d at 88 (quoting Bibles v. Or. Nat. Desert Ass'n, 519 U.S. 355, 355-356 (1997)) (alterations in original).  While the burden falls on the agency to show that withheld documents fall within the exemption, "[t]he requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." Associated Press v. U.S. Dep't of Justice, 549 F.3d 62, 65-66 (2d Cir. 2008).

## II.  Application of the Balancing Test to the OPR Redactions

As discussed above, the FBI made limited redactions to the two documents at issue.  The Court first evaluates whether these redactions comport with the more stringent balancing test of Exemption 6, which they do.[6]

---

[6] As a threshold matter, in order to qualify under Exemption 6, the files must be personnel, medical, or "similar files."  5 U.S.C. § 552(b)(6).  In their initial brief, the FBI argued that the OPR Precedent Reports are personnel or similar files.  Gov't Br. at 18-19.  It does not appear that plaintiffs dispute this point, see Pls. Br., Pls. Reply Br., but in any event, the Court agrees

First, a "government employee who is the subject of an investigation possesses a strong privacy interest in avoiding disclosure of details of the investigation." Perlman v. U.S. Dep't of Justice, 312 F.3d 100, 107 (2d Cir. 2002), vacated by 541 U.S. 970 (2004), reinstated on remand, 380 F.3d 110 (2d Cir. 2004). The identification of an officer or third party involved in an investigation implicates privacy interests because it could lead to "embarrassment" or "harassment," and the privacy interests are "even stronger . . . insofar as the material in question demonstrates or suggests that they had at one time been subject to criminal investigation." Halpern, 181 F.3d at 297; see also Dep't of the Air Force v. Rose, 425 U.S. 352, 377 (1976) (holding "identification of disciplined [Air Force] cadets" implicated privacy values as "a consequence of even anonymous disclosure could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as a loss of employment and friends"). This interest would certainly be implicated by the identification in an OPR Precedent Report related to an officer intentionally discharging his weapon.

---

with the FBI's analysis that these files are personnel or similar files and thus fall under Exemption 6.

While that interest can be triggered by the identification of a person by name, it can also be triggered by identifying details of an event.  See Horvath v. U.S. Secret Serv., 419 F. Supp. 3d 40, 47 (D.D.C. 2019) ("'Identifying information' is not limited to names, social security, and other discrete pieces of information."). For example, the Supreme Court held that the government could entirely withhold summaries of Air Force Academy Ethics hearings under Exemption 6 if "deletion of other identifying information [was] not sufficient to safeguard privacy." Rose, 425 U.S. at 381.  It elaborated that "what constitutes identifying information . . . must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar." Id. at 380.

Here, the FBI represents that it has redacted details within the OPR Precedent Reports that it believes could identify the FBI officers who are the subjects of the report, as well as third parties, even if their names were not included.  Second Seidel Decl. ¶ 12.  In reviewing the actual documents, the size and context of the redactions is consistent with the FBI explanation. For example, it appears that the FBI redacted the number of years an officer was with the FBI (i.e., "Employee has over [REDACTED] years of FBI service") and medical injuries incurred before or as

a result of the incident (i.e., "Employee was previously injured by [REDACTED] and suffered [REDACTED] during the incident."). Second Seidel Decl. Ex. A.  These details could identify the officer and are themselves personal in nature.  Moreover, other redactions appear to remove information about third parties involved in the shootings (i.e., "Employee improperly stored his weapon upon arriving [REDACTED] and fired his weapon at [REDACTED] while [REDACTED] extremely close by."). Id.

The bulk of plaintiffs' challenge stems from the short redactions included in "Narrative" sections of the reports. However, the FBI's affidavit provides a sufficient explanation for this withholding.  The FBI states that "the withheld descriptions relate to a small number of FBI agent-involved shooting incidents," and that "[d]etails about these incidents may be available, whether to the public or to other employees within the FBI, through other sources."  Second Seidel Decl. ¶ 12.  In turn, "revealing these descriptions risks disclosing the identities" of officers and third parties who "would likely be identifiable from the content of the withheld descriptions."  Id.

Under the law, this representation is entitled to a presumption of good faith and it is sufficient "if it appears logical or plausible." Wilner, 592 F.3d at 73.  The Court has no

reason to doubt that the FBI is acting in good faith.  They have been responsive to the requests for documents and produced at least six rounds of documents to plaintiffs.  Even after the initial motions were filed, the FBI reprocessed records and made an additional production to narrow the dispute.

Instead, plaintiffs argue that the FBI's reasoning is speculative or conclusory and fails to "meaningfully explain how disclosure of the specific information redacted here would allow a member of the public or an agency to identify the agents."  Pls. Reply at 4.  The Court disagrees.  In drafting these affidavits, the FBI faces a tension in that "too much specificity on the part of the government can reveal the classified information."  Halpern, 181 F.3d at 287.  The Court finds the explanation to be logical and plausible, without too much specificity that would divulge the protected information.  Therefore, the FBI has met its burden to demonstrate that the redactions protect against strong privacy interests.[7]

---

[7] The Court can make this determination without the need for in camera review. In this Circuit, "[i]n camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." Local 3, Intern. Bhd. of Elec. Workers, ALF-CIO v. Nat'l Labor Relations Board, 845 F.2d 1177, 1180 (2d Cir. 1988). Where the government's "affidavit is sufficiently detailed to place the documents within the claimed exemptions, and where the government's assertions are not challenged by contrary evidence or a showing of agency bad faith" then the "district court should restrain its discretion to order in camera review." Halpern, 181 F.3d at 292. As explained above, we find the FBI's affidavit contains sufficient information

These privacy interests outweigh the minimal public interest in disclosing a few sentences of the reports.  This Circuit has held that there is little public interest in the identification of law enforcement personnel or third parties since that information "sheds little light if any on the conduct and administration of FBI investigations." Halpern, 181 F.3d at 297; see also Perlman, 312 F.3d at 106 ("The public's interest in learning the identity of witnesses and other third parties is minimal because that information tells little or nothing about [the government's alleged misconduct]").

Plaintiffs recognize this and instead argue that the public interest lies in the belief that that the information behind the redactions would "show what information OPR weighed (and what information it failed to gather) in making its consequential decisions to discipline an FBI agent, and (more obviously) it would reveal the full extent of the misconduct committed by two particular FBI agents." Pls. Reply Br. at 6.  However, plaintiffs' argument is speculative and plainly disproportionate to the limited redactions actually included in the documents.

for us to review the FOIA exemption, and thus we need not review the documents in camera.

As discussed above, the majority of the redactions involve one or two words and it is fairly clear from the context what type of general information is likely behind that redaction. Even when the redactions are longer, the redactions could not encompass more than a maximum of one or two sentences. For instance, in the "Narrative" section regarding the February 11, 2019 incident, the Government redacted <u>less than two lines of text</u>. Second Seidel Decl. Ex A. There is simply a limit to the amount of information that can physically fit into this small space. The Court is doubtful that the information beneath the redactions would change the public's understanding of what the "government is up to." <u>Wood</u>, 432 F.3d at 88.

Instead, these documents reveal what the public has the most interest in knowing, namely that on March 22, 2019 an FBI officer intentionally discharged his weapon and the OPR determined he should be suspended for five days and that on February 11, 2019 another officer intentionally discharged his weapon and he would have faced a 55-day suspension had the officer not resigned prior to the transmission of the OPR finding.[8]

---

[8] In their reply briefs, the parties also engage with the factors outlined by the Second Circuit in <u>Perlman v. U.S. Dep't of Justice</u>, 312 F.3d 100 (2d Cir. 2002), which are:

> (1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds

-22-

Therefore, the FBI has properly withheld the information in these two documents under Exemption 6 to FOIA. Given that this is a sufficient basis to withhold the redacted material, the Court need not reach the alternative argument that the redactions fall under Exemption 7(C).[9]

---

light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature.

Id. at 107.

These factors are "not all inclusive, and no one factor is dispositive." Id. Although the incidents included in the OPR Precedent Reports involve the intentional discharge of a firearm, and at least one of the incidents involved on-the-job activity, there is no indication that the incidents involved higher-level FBI officers. Most importantly, the Court does not believe, as outlined above, that the redacted information "sheds light on a government activity." Accordingly, these factors do not change the Court's analysis.

[9] The Court notes that because Exemption 7(C) includes a less stringent balancing test than Exemption 6, the privacy interests articulated above necessarily meet the requirement of Exemption 7(C). However, plaintiffs argue that the OPR Precedent Reports do not meet the threshold issue under Exemption 7(C) that the reports were "compiled for law enforcement." Pls. Reply Br. at 2-3. Given our ruling under Exemption 6, the Court declines to wade into this unnecessary discussion.

**CONCLUSION**

Accordingly, for the reasons stated above, the Government's motion for summary judgment is granted.  As such, the Clerk of the Court is respectfully directed to close the motions pending at ECF Nos. 22 and 26, enter judgment for the Government, and close the case.

**SO ORDERED.**

Dated:     New York, New York
           September 13, 2023

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE